UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT S.,[1] | ) |
| | ) |
|        *Plaintiff*, | ) |
| | ) |
|        *v.* | )    No. 1:20-cv-02235-MG-RLY |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) ) |
| | ) |
|        *Defendant.* | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

In February 2018, Plaintiff Robert S. filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of August 15, 2012. [Filing No. 12-5 at 2.] His applications were initially denied on May 22, 2018, [Filing No. 12-4 at 7; Filing No. 12-4 at 16], and upon reconsideration on September 28, 2018, [Filing No. 12-4 at 26; Filing No. 12-4 at 33]. Administrative Law Judge Carol Guyton (the "ALJ") conducted a hearing on July 11, 2019. [Filing No. 12-2 at 31-83.] The ALJ issued a decision on August 8, 2019, concluding that Robert S. was not entitled to receive benefits. [Filing No. 12-2 at 16-29.] The Appeals Council denied review on June 26, 2020. [Filing No. 12-2 at 2-4.] On August 26, 2020, Robert S. timely filed this civil action asking the Court to

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner.

review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.] The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. [Filing No. 16.]

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built

---

[3] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects unless otherwise noted.

an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's

decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Robert S. was 38 years old on August 15, 2012, the date of his alleged onset of disability. [Filing No. 12-2 at 23.] He completed a high school education, is a veteran of the armed services, and has past relevant work experience of a warehouse order picker, a returns clerk, a production line assembler, and a newspaper deliverer. [Filing No. 12-2 at 23.] Robert S.'s original application alleges that he is unable to work because he suffers from bipolar II disorder, major depressive disorder, Gulf War Syndrome, severe fatigue, asthma, anxiety, ulcerative colitis, memory loss, debilitating headaches, and high blood pressure. [Filing No. 12-6 at 7.][4] As a preliminary matter, the ALJ found that Robert S. met the insured status requirement through December 31, 2017 for DIB benefits. [Filing No. 12-2 at 18.]

The ALJ then followed the five-step sequential evaluation set forth in 20 C.F.R. § 416.920(a)(4) and concluded that Robert S. was not disabled and therefore did not qualify for DIB or SSI benefits. [Filing No. 12-2 at 24-25.] Specifically, the ALJ found as follows:

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Robert S. had not engaged in substantial gainful activity[5] during the period at issue. [Filing No. 12-2 at 18.]

- At Step Two, Robert S. "has the following severe impairments: ulcerative colitis, asthma, bipolar disorder, major depressive disorder, anxiety disorder, panic disorder, and alcohol use disorder." [Filing No. 12-2 at 18-19.]

- At Step Three, Robert S. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 12-2 at 19-20.]

- After Step Three but before Step Four, Robert S. had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: occasional exposure to fumes, dust, odors, gases, and poor ventilation; limited to simple, routine tasks involving no more than simple, short instructions and simple, work related decisions with few work place changes; no interaction with general public, occasional interaction with coworkers and supervisors; no fast paced production requirements; and must have close proximity to a lavatory." [Filing No. 12-2 at 20-21.]

- At Step Four, the ALJ found that Robert S. is unable to perform is past relevant work. [Filing No. 12-2 at 23.]

- At Step Five, relying on the testimony of a vocational expert ("VE") and considering Robert S.'s age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he could perform, such as hand packager, laundry worker, and industrial cleaner. [Filing No. 12-2 at 23-24.]

## III.
### DISCUSSION

Robert S. argues that the ALJ erred: (1) by not adequately considering the Paragraph C criteria when evaluating whether Robert S. met Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders) at Step Three; (2) by omitting a discussion of the Paragraph A criteria for Listings 12.04 and 12.06 at Step Three; (3) by finding that Robert S. did not satisfy Paragraph B criteria with respect to Listings 12.04 and 12.06 without

---

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972.

considering evidence after his date of last insured, December 31, 2017; and (4) by not fully accounting for Robert S.'s mental limitations in his RFC at Step Five. [*See* Filing No. 23 at 15.]

### A.     The ALJ's Step Three Listing Analysis

As noted above, Robert S. contends that the ALJ made various errors at Step Three in evaluating whether Robert S. met or medically equaled a Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1, which, if satisfied, would effectively render a finding that Robert S. is *per se* disabled.  The only listings at issue in this appeal are Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders).  [*See* Filing No. 23 at 19 (stating that Robert S. does not contest the findings for Listings 3.03 and 5.02).]  It is a claimant's burden to show not only that his impairments meet a designated listing, but also that his impairments satisfy all of the criteria specified in a listing.  *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999).

Listings 12.04 and 12.06 have three paragraphs, designated A, B, and C, and a claimant's impairment must satisfy the requirements of **both** Paragraphs A and B, **or** the requirements of Paragraphs A **and** Paragraph C.

For Listing 12.04, a claimant must meet the following criteria:

> **12.04 Depressive, bipolar and related disorders** … satisfied by A and B, or A and C:
> > A. Medical documentation of the requirements of paragraph 1 or 2:
> > > 1. Depressive disorder, characterized by five or more of the following: (a.) Depressed mood; (b.) Diminished interest in almost all activities; (c.) Appetite disturbance with change in weight; (d.) Sleep disturbance; (e.) Observable psychomotor agitation or retardation; (f.) Decreased energy; (g.) Feelings of guilt or worthlessness; (h.) Difficulty concentrating or thinking; or (i.) Thoughts of death or suicide.
> > > 2. Bipolar disorder, characterized by three or more of the following: (a.) Pressured speech; (b.) Flight of ideas; (c.) Inflated self-esteem; (d.) Decreased need for sleep; (e.) Distractibility; (f.) Involvement in activities that have a high probability of painful consequences that are not recognized; or (g.) Increase in goal-directed activity or psychomotor agitation.

AND
    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
        1. Understand, remember, or apply information (see 12.00E1).
        2. Interact with others (see 12.00E2).
        3. Concentrate, persist, or maintain pace (see 12.00E3).
        4. Adapt or manage oneself (see 12.00E4).

OR
    C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
        1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
        2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1

For Listing 12.06, a claimant must meet the following criteria:

**12.06 Anxiety and obsessive-compulsive disorders** … satisfied by A and B, or A and C:
    A. Medical documentation of the requirements of paragraph 1, 2, or 3:
        1. Anxiety disorder, characterized by three or more of the following; (a.) Restlessness; (b.) Easily fatigued; (c.) Difficulty concentrating; (d.) Irritability; (e.) Muscle tension; or (f.) Sleep disturbance.
        2. Panic disorder or agoraphobia, characterized by one or both: (a.) Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or (b.) Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).
        3. Obsessive-compulsive disorder, characterized by one or both: (a.) Involuntary, time-consuming preoccupation with intrusive, unwanted thoughts; or (b.) Repetitive behaviors aimed at reducing anxiety.

AND
    B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
        1. Understand, remember, or apply information (see 12.00E1).
        2. Interact with others (see 12.00E2).
        3. Concentrate, persist, or maintain pace (see 12.00E3).
        4. Adapt or manage oneself (see 12.00E4).

OR

> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. § Pt. 404, Subpt. P, App. 1.

### 1. *Paragraph C Criteria*

Robert S. contends that the ALJ erred by not sufficiently addressing Paragraph C of Listings 12.04 and 12.06. [Filing No. 23 at 16.] He faults the ALJ for providing "no citations to the record" and ignoring evidence in the record. [Filing No. 23 at 16-17.] He points to evidence that he was hospitalized in early 2012 for suicidal ideation and cites medical records referencing mental health issues dating back to 2006. He also says that because he lives with Lisa Krinn, a friend-caretaker who is a nurse, he meets Paragraph C criteria because living in her home provides ongoing support and treatment that has resulted in the diminishment of his symptoms. [Filing No. 23 at 17.] Robert S. further contends that he meets the marginal adjustment requirement because if he did not live with Ms. Krinn in the structured environment that her home provides, he would have minimal capacity to adapt to the demands of daily life. [Filing No. 23 at 18.] He notes that before he moved in with Ms. Krinn, he had multiple DUIs and hospitalizations for mental health issues, but none subsequent to moving in with her. [Filing No. 23 at 18.] Robert S. says that the ALJ erred by not discussing this evidence relating to Ms. Krinn and that the ALJ's analysis of Paragraph C was so short and perfunctory that it precludes meaningful judicial review. [Filing No. 23 at 19.]

8

The Commissioner responds that Robert S. did not meet his initial burden, namely that he did not provide "documented medical history of at least two years of (1) ongoing treatment in a highly structured setting that diminishes the symptoms and signs of a claimant's mental disorder, and (2) marginal adjustment or minimal capacity to adapt to changes in the claimant's environment." [Filing No. 24 at 9.] As for Plaintiff's argument that his living situation with Ms. Krinn is evidence sufficient to satisfy the Paragraph C criteria, the Commissioner says that Robert S.'s "own belief that his living arrangement constituted ongoing, highly structured treatment and showed his minimal capacity to adapt is at odds with the findings of the state agency psychological consultants who found the evidence did not satisfy the paragraph C criteria." [Filing No. 24 at 9.] The Commissioner also cites cases that stand for the proposition that an ALJ need not address every piece of evidence in the record. [Filing No. 24 at 10.]

In reply, Robert S. contends that the ALJ did not address medical evidence in evaluating whether he met criteria in Paragraph C, nor does the ALJ's brief discussion of Robert S.'s medical history in connection with the RFC enlighten the ALJ's listings analysis. [Filing No. 25 at 2-3.] As for the ALJ's citation to the state psychological consultants, Robert S. argues that the consultants failed to consider evidence after December 31, 2017, his date of last insured, even though he also applied for SSI benefits.[6] [Filing No. 25 at 5.] He reiterates that the ALJ's failure to discuss his supportive living environment with Ms. Krinn in the context of Paragraph C was error because it prevents the Court from engaging in a meaningful review. [Filing No. 25 at 5.]

---

[6] DIB is limited by the claimant's date of last insured, but SSI is not because it is meant to be "available to people with disabilities who have low income and few assets, regardless of their work history or insured status." *Carter v. Colvin*, 556 F. App'x 523, 526 n.2 (7th Cir. 2014) (citing 42 U.S.C. § 1382(a)).

9

The Paragraph C criteria for Listings 12.04 and 12.06 are used "to evaluate mental disorders that are 'serious and persistent,'" recognizing that "mental health interventions may control the more obvious symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(1). In other words, the Paragraph C criteria address the situation where symptoms are not necessarily currently extreme but are "serious and persistent," and "could worsen if the person had to significantly change their daily routine." *See Carl D. v. Saul*, 2021 WL 363599, at *2 (N.D. Ind. Feb. 3, 2021).

The criterion in (C)(1) of Listings 12.04 and 12.06 are satisfied "when the evidence shows that [the claimant] rel[ies], on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [the claimant's] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00G(2). The criterion of (C)(2) is satisfied "when the evidence shows that, despite [the claimant's] diminished symptoms and signs," due to living in a highly structed setting, the claimant has "achieved only marginal adjustment." *Id.* The term "marginal adjustment" means that the claimant's "adaptation to the requirements of daily life is fragile" and requires evidence that "changes or increased demands have led to exacerbation of [the claimant's] symptoms and signs and to deterioration in [the claimant's] functioning," including "becom[ing] unable to function outside your home." *Id.*

While the ALJ is not held to a high bar of articulation at Step Three, some level of analysis is required. *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015). And although the Court must give deference to the ALJ's factual determinations underlying her listing assessment, the ALJ must consider all the evidence, particularly evidence contrary to the determination. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999)). To demonstrate that the ALJ's listing conclusion was not supported by substantial

evidence, the claimant must identify record evidence that was misstated or ignored, and that could support a finding that claimant met or equaled the criteria.  *See*, *e.g.*, *Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002).

> At Step Three, the ALJ found that Robert S. did not meet the Paragraph C criteria:
>
> The undersigned has also considered whether the "paragraph C" criteria are satisfied.  In this case, the evidence fails to establish the presence of the "paragraph C" criteria.  The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.  There is no evidence of exacerbations requiring inpatient hospitalizations or significant medication adjustments.

[Filing No. 12-2 at 20.]  The ALJ did not discuss whether Robert S. presented sufficient evidence to meet the Paragraph A criteria for Listings 12.04 and 12.06, apparently assuming that he had for purposes of issuing the decision.  To demonstrate that the ALJ's Paragraph C conclusion is not supported by substantial evidence, Robert S. points to record evidence indicating that his mental impairments have been present for more than two years and that he relied on the controlled environment provided by Ms. Krinn to diminish the symptoms of his depression and bipolar disorder.

In terms of his medical history, the record establishes that Robert S. suffered several acute mental health issues during 2009-2012.  In June 2009, Robert S. arrived at the emergency department following a call to 911 because he experienced racing thoughts and reported that he had bipolar symptoms and had not taken his psychotropic medications for the last five years. [Filing No. 12-8 at 191.]  In February 2010, Robert S. sought treatment from the VA hospital for bipolar disorder.  [Filing No. 12-8 at 156.]  He reported that at times "he just wants to slap a stranger in the head for no reason" and that he worked delivering newspapers because "he does not want to interact with people."  [Filing No. 12-8 at 159.]  In May 2010, Robert S. underwent a

11

psychiatric evaluation through his local VA hospital. [Filing No. 12-8 at 130.] The note from that visit indicated that it was unclear whether Robert S. "is experiencing hypomania or personality [disorder] which may impact his ability to process emotions and reactions to his environment." [Filing No. 12-8 at 129.] Robert S. reported issues with impulsivity, irritability, and racing thoughts which are "exacerbated during times of interpersonal and situational stressors" and reported "irritability to the point he wants to punch someone" and the "need to isolate from others." [Filing No. 12-8 at 130.] He began taking Citalopram. [Filing No. 12-8 at 135.] A progress note from June 17, 2010 indicates that Robert S. suffered from depressive disorder, mood disorder NOS with cluster B traits, and that he had the inability to identify feelings and was sleeping intermittently. [Filing No. 12-8 at 125.] He was taking Abilify and Citalopram. [Filing No. 12-8 at 126.] In September 2010, Robert S. arrived at the emergency department once again with racing thoughts and anxiety. [Filing No. 12-8 at 114.] Notes from that event document Robert S.'s history of depression and mood disorder with "cluster B" traits. [Filing No. 12-8 at 114.] At that time, he also reported that he had recently stopped taking his mood disorder medications of Citalopram and Abilify and had "barely slept since that time." [Filing No. 12-8 at 114.] He reported previously having suicidal thoughts. [Filing No. 12-8 at 114.] He was discharged and instructed to follow up with a mental health clinic. Subsequent notes indicate that he "no showed for psych follow up." [Filing No. 12-8 at 96.] Robert S. was hospitalized at the VA Medical Center for suicidal ideations in late January 2012. [*See* Filing No. 12-8 at 2.] He reported "racing thoughts, 'no light at the end of the tunnel,' anhedonia, restless, and increased [alcohol] use, which had been occurring for a number of months but worsened after a recent break up with his girlfriend." [Filing No. 12-8 at 18-19.] He also described a history of "manic type symptoms." [Filing No. 12-8 at 19.] Shortly after his discharge, Robert S. was cited for DUI. [Filing No. 12-8 at 239.] During that

12

arrest, police determined that Robert S. may have been suicidal and had him involuntarily committed for a medical evaluation on February 12, 2012. [Filing No. 12-7 at 492; Filing No. 12-8 at 239.] His insight and judgment were deemed to be fair to poor at that time, but he denied any suicidal ideation. [Filing No. 12-8 at 240.] He was released home to follow-up with psych, but subsequent records indicate that he once again failed to attend follow-up appointments. [Filing No. 12-8 at 241; Filing No. 12-7 at 479.]

After his hospitalizations in early 2012, little documentation is in the record about Robert S.'s receipt of mental health treatment. His records show that he has continued to take a prescription for Venlafaxine to address his mood disorder but has not otherwise sought treatment. [*See, e.g.*, Filing No. 12-8 at 3.] A progress note from April 2015 states that Robert S.'s "[m]ental health better but not seeing psych." [Filing No. 12-8 at 549.] In June 2019, Robert S. was assessed by a clinical psychologist. [Filing No. 12-8 at 288.] The psychologist confirmed a diagnosis of bipolar disorder and recommended psychotherapy. [Filing No. 12-8 at 290-291.]

This timeline, Robert S. says, is evidence of marginal adjustment. He notes that prior to living in the highly structured setting provided by Ms. Krinn, he was unable to function in society. Robert S. testified at his hearing that he began living with Ms. Krinn around 2012 or 2013. [Filing No. 12-2 at 54.] He told the ALJ that he hasn't required intensive treatment or hospitalization for his mental health issues in recent years because Ms. Krinn provides a stable, controlled living environment. [Filing No. 12-2 at 54-55.] Nor has he received additional DUI charges since moving in with Ms. Krinn. [Filing No. 12-2 at 54.] Robert S. testified that Ms. Krinn "talk[s] me down from being manic I, I would say, or doing stupid, impulsive things," and that she reminds him of appointments and the need for him to complete certain tasks. [Filing No. 12-2 at 54-55.]

13

In *Herron v. Comm'r of Soc. Sec.*, 788 F. Supp. 2d 809 (N.D. Ind. 2011), the court remanded a determination that the claimant did not meet the Paragraph C criteria where the ALJ did not address "evidence that [claimant] was unable to function outside a highly supportive living arrangement, such as [claimant's] ex-wife's testimony that she had to treat [claimant] like a child, that she had to seek help for him because his capabilities became progressively more limited, and that 'he didn't ever seem to know what he was doing.'" *Id.* at 817. Likewise, here, there is evidence from Ms. Krinn that she needs to remind Robert S. to cut his hair and of medical appointments and that he depends on her to complete various tasks because he is scared to go out in public. [*See* Filing No. 12-6 at 26-29.] She also says that Robert S. has difficulty interacting with others, staying focused on tasks at hand, and adjusting to change. [Filing No. 12-6 at 30-31.] Robert S. says that Ms. Krinn organizes his medications and reminds him to take care of his pets. [Filing No. 12-6 at 17.] The ALJ had a duty to evaluate this evidence in the context of Paragraph C.

The ALJ made no findings and provided no discussion of the evidence that could support the Paragraph C criteria. The ALJ's decision omits any discussion of his living environment with Ms. Krinn and whether such evidence supports a finding of marginal adjustment and improvement with a highly structured environment. The ALJ has a duty to confront such evidence and explain how the evidence fit into the ALJ's analysis of the Paragraph C criteria, and the ALJ's failure to do so was error. *See, e.g.*, *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("ALJ must confront the evidence that does not support her conclusion and explain why the evidence was rejected.").

The Court takes no position on whether the evidence as a whole establishes that Robert S. satisfies Paragraph C. Rather, the Court simply concludes that the ALJ improperly ignored this related evidence or had reason to reject it but did not explain her reasoning sufficiently. *See, e.g.*,

*Bjornstad v. Kijakazi*, 2021 WL 5231736, at *4 (N.D. Ind. Nov. 9, 2021) (citing *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)).

### 2. *Paragraph A and B Criteria*

Robert S. raises arguments about the ALJ's analysis with respect to Paragraphs A and B. [*See* Filing No. 23 at 19-26.] Because the Court is remanding so that the ALJ can fully consider evidence related to Paragraph C, the Court need not delve into these issues. Nevertheless, on remand, the ALJ should take care to fulfill her obligation to build a logical bridge from the evidence to the conclusion, including ensuring that evidence beyond the date of last insured is considered in connection with Robert S.'s SSI application. [*See* Filing No. 23 at 25 (arguing that state examiners failed to consider evidence beyond date of last insured even though Robert S. submitted an SSI application in addition to his DIB application).]

**B.   The ALJ's RFC Finding at Step Five**

Robert S.'s argument regarding Step Five is not particularly well developed in his briefing. [*See* Filing No. 23 at 27.] He appears to argue that the jobs identified by the VE, such as hand packager, laundry worker, and industrial cleaner, which have a Specific Vocational Preparation ("SVP") rating of 2, are inconsistent with the RFC of "simple, routine tasks involving no more than simple, short instructions and simple, work related decisions with few work place changes." [Filing No. 12-2 at 20.]

Because the considerations to be addressed on remand may ultimately impact an RFC finding, the Court declines to decide this issue. The Court notes, however, that the Seventh Circuit's decision in *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) appears to reject the argument advanced by Robert S. in this appeal.

15

## IV.
### CONCLUSION

For the reasons detailed above, the Court **REVERSES** the ALJ's decision denying Robert S. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.  Final judgment will issue by separate entry.


Date: 12/16/2021

*(signature)*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana


**Distribution via ECF to all counsel of record.**